1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LORRAINE A. TORRES,

                                    Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

                                    Defendant.

3:14-cv-00113-RCJ-WGC

**REPORT & RECOMMENDATION OF
U.S. MAGISTRATE JUDGE**

        This Report and Recommendation is made to the Honorable Robert C. Jones, United

States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff

Lorraine A. Torres's Motion for Reversal and/or Remand. (Docs. # 17 (Notice), # 17-1 (Pl.'s

Br.).)[1] The Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for

Reversal and/or Remand. (Docs. # 18/19.)[2] Plaintiff filed a reply. (Doc. # 20.)

        After a thorough review, the court recommends that Plaintiff's motion be denied and that

the Commissioner's cross-motion to affirm be granted.

## I. BACKGROUND

        Plaintiff protectively filed applications for Social Security Disability Insurance Benefits

(DIB) and Supplemental Security Income (SSI) on April 6, 2010, alleging disability since

April 30, 2008, due to depression, anxiety, kidney problems, arthritis, and apnea. (Administrative

Record (AR) 172-178, 180-89.) The applications were denied initially and on reconsideration.

(AR 124-128, 131-137.)

---

[1] Refers to court's docket number.

[2] These documents are identical.

Plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ). (AR 138-39.) On February 13, 2012, Plaintiff appeared, represented by counsel, for a hearing before the ALJ. (AR 80-114.) The ALJ took testimony from Plaintiff and a vocational expert. (*Id.*) On March 1, 2012, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-27.) Plaintiff appealed (AR 12-13) and the Appeals Council denied review on July 26, 2013. (AR 6-11.) Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff now appeals the decision to the district court. (Doc. # 17-1.) Plaintiff argues: (1) the ALJ improperly found that Plaintiff's mental impairments of post-traumatic stress disorder (PTSD), anxiety and depression were not severe at step two of the sequential evaluation process; (2) two of the three jobs the ALJ identified as past relevant work are not past relevant work as that term is defined in agency regulations, and the remaining position is a skilled, socially-intensive job precluded by Plaintiff's mental limitations; and (3) the ALJ's alternative step five finding is in error because all of the identified jobs are unskilled light jobs, and Plaintiff must be found disabled under agency rules if she is limited to unskilled light work. (Doc. # 17-1.)

In her first argument, Plaintiff contends that the ALJ's finding that her mental impairments were not severe at step two is contrary to every medical opinion in the record, establishing that the ALJ improperly substituted her judgment for those of the physicians. (Doc. # 17-1 at 3.) She contends that her depression, anxiety and PTSD stem from being battered as well as a tragic event that occurred in 1993 when her ex-husband murdered her thirteen year old son, her mentally disabled brother-in-law and attempted to murder her other two children. (*Id.* at 4.) Since this event, she has struggled with depression, anxiety and PTSD. (*Id.*) State examining psychologist, Dr. Robert Wildman, II, identified several moderate functional restrictions resulting from Plaintiff's mental impairments, including moderate limitations in her ability to interact appropriately with co-workers, supervisors and the public and in her ability to maintain concentration and attention. (*Id.* at 4-5.) These limitations were confirmed by State agency reviewing psychologist, Dr. Susan Kotler. (*Id.* at 5.)

1    In her second argument, Plaintiff addresses the ALJ's finding at step four that she could

2    return to past relevant work as a housekeeper, floor clerk and apartment management. (*Id*. at 6.)

3    Plaintiff initially argues that the ALJ's finding that Plaintiff could return to past relevant work as

4    a housekeeper is in error because this job is beyond the fifteen-year regulatory window and

5    cannot be considered past relevant work. (*Id*. at 7.) Next, she argues that the job of floor clerk

6    was not performed at a substantial gainful activity level and cannot be considered as past

7    relevant work. (*Id*. at 7-8.) Finally, she asserts that the remaining past relevant job of apartment

8    manager is a skilled and socially-intensive job that involves considerable interaction with others

9    and should be excluded or analyzed in light of Plaintiff's mental limitations. (*Id*. at 8-9.)

10   In her third argument, Plaintiff asserts that while the ALJ found Plaintiff had a residual

11   functional capacity for medium work, all of the jobs identified in the ALJ's alternative step five

12   finding were unskilled light jobs, and under the regulations, an individual who is fifty-five or

13   older and can perform only light jobs must be found disabled as a matter of law in the absence of

14   transferable skills that allow the performance of more than unskilled work. (Doc. # 17-1 at 10.)

15   She contends that unskilled jobs identified by the VE and ALJ do not use skills (transferable or

16   otherwise), and skills can only be transferred to skilled or semi-skilled work, and even if there

17   were transferable skills, a finding of disability is required for Plaintiff's age unless she has skills

18   readily transferable to a significant range of skilled or semi-skilled work. (*Id*.)

19   The Commissioner, on the other hand, first argues that the ALJ properly found Plaintiff's

20   mental impairments were not severe at step two, as the record indicated only sporadic complaints

21   of depression and PTSD stemming from a family tragedy in 1993 and Plaintiff was able to work

22   as an apartment and hotel manager from 1993 to 2007 and a floor clerk from 2007 to 2008;

23   therefore, her mental health issues did not impair her ability to work. (Docs. # 18/19 at 4.) To the

24   extent the court finds the ALJ erred in finding the mental impairments were not severe, the

25   Commissioner argues this error was harmless because the doctors who assessed Plaintiff's

26   mental limitations concluded that despite some mild and moderate limitations, she could still

27   perform simple, repetitive tasks which is consistent with the ALJ's finding that she could

28   perform her past relevant work as a housekeeper and floor clerk. (*Id*. at 5-6.)

1  Second, the Commissioner argues that the ALJ, relying on the VE's testimony, properly

2  concluded Plaintiff could perform past relevant work as a housekeeper, resident manager, and

3  floor clerk. (*Id*. at 6-8.) The ALJ found Plaintiff performed all of this work within fifteen years of

4  her alleged onset date of April 30, 2008. With respect to Plaintiff's argument that she did not

5  perform work as a housekeeper within fifteen years of the ALJ's decision (so it cannot count as

6  past relevant work), the Commissioner argues that the regulations provide that while the agency

7  does not normally consider work outside the fifteen year window, the important consideration is

8  whether the job has materially changed after fifteen years. (*Id*. at 6-7.) The Commissioner

9  contends that Plaintiff has not demonstrated she could not work as a housekeeper. (*Id*. at 7.)

10  Insofar as Plaintiff argues that her earnings for her past relevant work as a floor clerk did

11  not reach the substantial gainful activity requirements for the relevant time period, the

12  Commissioner argues that even if the ALJ erred in this regard any error is harmless because

13  earnings are just one factor, and are not conclusive in determining past relevant work. (*Id*.) In

14  addition, the Commissioner contends that Plaintiff was also able to perform several other jobs at

15  substantial gainful activity levels which reinforces the ALJ's conclusion that Plaintiff was

16  generally capable of performing substantial gainful activity.

17  With respect to the remaining resident manager position, and Plaintiff's argument that her

18  mental limitations would preclude her from performing this position, the Commissioner contends

19  that Plaintiff is not a vocational expert capable of making such a determination. (*Id*. at 8.) The

20  Commissioner asserts that the ALJ properly relied on the VE's testimony in finding that Plaintiff

21  could perform past relevant work as a resident manager. (*Id*.)

22  Finally, as to Plaintiff's last argument, the Commissioner initially states that the ALJ

23  elicited testimony from the VE that a hypothetical person with Plaintiff's limitations could

24  perform the other jobs of storage facility clerk, officer helper, and information clerk. (*Id*. at 9.) In

25  addition, the Commissioner contends that the jobs identified were examples of representative

26  occupations Plaintiff could perform and did not represent all jobs in the national economy

27  Plaintiff could perform. (*Id*.) Plaintiff contends that Grid Rules 202.04 and 202.06 require a

28  finding of disability, but the Commissioner argues that these rules only apply if Plaintiff were

1    limited to light exertional work and Plaintiff was limited to medium work. (*Id.*) Alternatively, if

2    the ALJ did err in her step five finding, the error is harmless since the ALJ concluded Plaintiff

3    could perform past relevant work at step four.

4                               **II. STANDARD OF REVIEW**

5            The court must affirm the ALJ's determination if it is based on proper legal standards and

6    the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec.*

7    *Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is

8    'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

9    reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-

10    24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

11            To determine whether substantial evidence exists, the court must look at the record as a

12    whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,

13    740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

14    not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*,

15    759F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035

16    (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in

17    medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d

18    1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or

19    reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner."

20    *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

21    That being said, "a decision supported by substantial evidence will still be set aside if the ALJ

22    did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

23    1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In

24    addition, the court will "review only the reasons provided by the ALJ in the disability

25    determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*,

26    759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

27    ///

28    ///

1

## III. DISCUSSION

2

**A. Five-Step Sequential Process**

3        Under the Social Security Act, "disability" is the inability to engage "in any substantial

4   gainful activity by reason of any medically determinable physical or mental impairment which

5   can be expected to result in death or which has lasted or can be expected to last for a continuous

6   period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined

7   to be under a disability only if his physical or mental impairment or impairments are of such

8   severity that he is not only unable to do his previous work but cannot, considering his age,

9   education, and work experience, engage in any other kind of substantial gainful work which

10  exists in the national economy, regardless of whether such work exists in the immediate area in

11  which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if

12  he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

13       The Commissioner has established a five-step sequential process for determining whether

14  a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S.

15  137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding

16  of disability or nondisability, a determination will be made and the SSA will not further review

17  the claim. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4); *see also Barnhart v. Thomas*, 540

18  U.S. 20, 24 (2003). "'The burden of proof is on the claimant at steps one through four, but shifts

19  to the Commissioner at step five.'" *Garrison*, 759 F.3d at 1011 (quoting *Bray v. Comm'r of Soc.*

20  *Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

21       In the first step, the Commissioner determines whether the claimant is engaged in

22  "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied.

23  20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant

24  is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

25       The second step requires the Commissioner to determine whether the claimant's

26  impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and

27  § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits

28

1   the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are

2   "the abilities and aptitudes necessary to do most jobs[,]" which include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

6   20 C.F.R. § 404.1521 and § 416.921. If a claimant's impairment is so slight that it causes no

7   more than minimal functional limitations, the Commissioner will find that the claimant is not

8   disabled. 20 C.F.R.§ 404.1520(a)(4)(ii), (c) and 416.920(a)(ii). If, however, the Commissioner

9   finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id.*

10       In the third step, the Commissioner looks at a number of specific impairments listed in

11   20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the

12   impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R.

13   § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed

14   Impairments are severe enough to preclude any gainful activity, regardless of age, education, or

15   work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of

16   the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed

17   disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is

18   severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to

19   step four. *Yuckert*, 482 U.S. at 141.

20       At step four, the Commissioner determines whether the claimant can still perform "past

21   relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past

22   relevant work is that which a claimant performed in the last fifteen years, which lasted long

23   enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R.

24   § 404.1565(a) and § 416.920(b)(1).

25       In making this determination, the Commissioner assesses the claimant's residual

26   functional capacity (RFC) and the physical and mental demands of the work previously

27   performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231

28   (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R.

- 7 -

§ 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[3]

---

[3] "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id.* Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id.* For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id.*

1    If at step five the Commissioner establishes that the claimant can do other work which

2    exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely,

3    if the Commissioner determines the claimant unable to adjust to any other work, the claimant

4    will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071;

5    *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

6    **B. ALJ's Findings in this Case**

7    In the present case, the ALJ applied the five-step sequential evaluation process and found

8    at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset

9    date of April 30, 2008. (AR 20.)

10   At step two, the ALJ found it was established Plaintiff suffered from the following severe

11   impairments: degenerative joint disease, osteoarthritis and obesity. (AR 20.) The ALJ stated,

12   *inter alia*, that Plaintiff's medically determinable mental impairments of depression and PTSD

13   do not cause more than minimal limitation on Plaintiff's ability to perform basic mental work

14   activities; and therefore, found them to be non-severe. (AR 21.) In coming to this conclusion, the

15   ALJ found Plaintiff had no limitations in activities of daily living as Plaintiff lived with and

16   cared for her son, was able to handle money, care for herself, cook, clean, shop in stores, drive

17   and sew. (AR 21.) Next, the ALJ stated that Plaintiff has only mild limitations in social

18   functioning as she spends time with her family, speaks with her daughter who lives in Los

19   Angeles, and there is no evidence she has difficulty interacting appropriately with others as she

20   worked as an apartment manager for thirteen years which involved the development of customer

21   service skills. (AR 21.) The ALJ likewise found Plaintiff only has mild limitation in

22   concentration, persistence or pace, pointing to Plaintiff's ability to concentrate well enough to

23   sew, watch television, cook, drive and read, and indicated that her work history showed her

24   concentration capability despite episodic symptoms of PTSD and depression. (AR 21.) Finally,

25   the ALJ said Plaintiff had no episodes of decompensation of extended duration. (AR 21.)

26   At step three, the ALJ concluded Plaintiff did not have an impairment or combination of

27   impairments that meet or medically equal the severity of one of the Listed Impairments. (AR 22.)

28

1    At step four, the ALJ found Plaintiff has the RFC to perform medium work as defined in

2    20 C.F.R. § 404.1567(c) and 416.967(c) with no climbing and occasional balancing, crouching,

3    crawling, kneeling, and stooping; and no concentrated exposure to unprotected heights and

4    dangerous moving machinery. (AR 22.) Initially, the ALJ noted Plaintiff claimed disability due

5    to both physical and mental impairments. (AR 23.) Physically, she alleged pain in her back and

6    lower extremities, problems sleeping, inability to sit, stand or walk for extended periods and

7    inability to lift or carry more than fifteen pounds. (AR 23.) Mentally, she alleged frequent

8    thoughts about a family tragedy in 1993, resulting in difficulties concentrating and interacting

9    with others. (AR 23.)

10    Insofar as this report and recommendation is concerned, the ALJ stated that Plaintiff's

11    records related to her mental impairments showed sporadic complaints of depression and PTSD

12    stemming from a family tragedy in 1993 where Plaintiff's then-husband murdered her son and

13    severely injured her other children. (AR 24.) The ALJ stated that following this incident,

14    Plaintiff had episodic symptoms of PTSD and depression. (AR 24.) The ALJ pointed to the fact

15    that despite her symptoms, Plaintiff was able to work as an apartment and hotel manager from

16    1993 to 2007, and a floor clerk from 2007 to 2008, and continued to look for work from 2008

17    through 2010. (AR 24.) Plaintiff testified that she cared for her disabled son. (AR 24.) The ALJ

18    concluded that the evidence demonstrated that Plaintiff's mental symptoms did not significantly

19    interfere with her ability to work, and noted that since her April 2008 onset date there were no

20    significant mental health treatment notes showing any worsening of her condition. (AR 24.)

21    The ALJ then assigned "little weight" to the opinion of Dr. Wildman, who found Plaintiff

22    mildly to moderately impaired in her ability to interact appropriately with coworkers, supervisors

23    and the public. (AR 25.) The ALJ explained that she thought Dr. Wildman overlooked Plaintiff's

24    past work history and activities of daily living, stating that she worked as an apartment and hotel

25    manager for fourteen years, demonstrating an ability to interact appropriately with others and

26    concentrate well enough to perform the tasks required of the position. (AR 25.) In addition, the

27    ALJ highlighted Plaintiff's activities of daily living, including caring for her disabled son,

28    cooking, cleaning, driving, shopping in stores and sewing. (AR 25.) The ALJ noted that the State

1   agency psychological consultants also found Plaintiff had moderate limitations in social

2   functioning and concentration, persistence and pace, but assigned them "little weight," for the

3   same reasons as those discussed with respect to Dr. Wildman. (AR 25.)

4          The ALJ then concluded Plaintiff was capable of performing past relevant work as an

5   apartment manager, floor clerk and housekeeper. (AR 25.) All of these jobs are categorized as

6   light work. (AR 25.) The ALJ stated that Plaintiff's prior work was within fifteen years of her

7   alleged onset date. (AR 25.) The ALJ also indicated that Plaintiff's earnings activity for these

8   jobs exceeded the substantial gainful activity requirements for the relevant time periods. (AR

9   25.) Thus, she found they qualified as PRW pursuant to Social Security Ruling 82.62. (AR 25.)

10  The ALJ indicated that the VE testified that Plaintiff is capable of performing these past relevant

11  work positions. (AR 25.)

12         The ALJ then made an alternative finding at step five that Plaintiff could perform jobs

13  that exist in the national economy in significant numbers. (AR 26.) The ALJ considered

14  Plaintiff's age, which she stated was fifty-nine as of the alleged onset date (noting that she

15  changed categories to closely approaching retirement age), her high school education and ability

16  to communicate in English, her acquired work skills from past relevant work, and RFC. (AR 26.)

17  The VE testified that Plaintiff's past relevant work as an apartment manager was semi-skilled

18  with a specific vocational preparation  score of five and required skills of managing funds,

19  customer service and supervisory skills. (AR 26.) In addition, the ALJ found Plaintiff acquired

20  work skills from past relevant work that were transferable to other occupations with jobs existing

21  in significant numbers in the national economy. (AR 26.)

22         Based on this information and Plaintiff's RFC, age and education, the VE testified that

23  representative occupations that Plaintiff can perform include: storage clerk, DOT 295.367-026

24  (light work with SVP 2); office helper, DOT 239.367-010 (light work with SVP 2); and

25  information clerk, DOT 237.367-018 (light work with SVP 2).

26         The ALJ stated that while Plaintiff's additional limitations would not allow her to

27  perform the full range of medium work, considering her age, education and transferable work

28

1   skills, a finding of not disabled is appropriate under the Grids, Rule 203.16 and 203.08. (AR 26-
2   27.)

3   **C. Step Two-Mental Impairments**

4        Plaintiff first argues that the ALJ erred in finding that Plaintiff's mental impairments
5   were not severe at step two of the sequential analysis.

6        As noted above, a social security claimant must have a severe impairment (or
7   combination of impairments) that significantly limits the physical or mental ability to do basic
8   work activities, or they are found not disabled. *See* 20 C.F.R. § § 404.1520(c), 416,920(c). If the
9   ALJ finds the claimant has an impairment(s) that is severe, the ALJ will proceed to step three.
10  An impairment is not severe if it does not significantly limit the claimant's physical or mental
11  ability to do basic work activities, which are defined as the abilities and aptitudes to do most
12  jobs, such as: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or
13  handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering
14  simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers
15  and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R.
16  § § 404.1521, 416.921. The claimant must prove the physical or mental impairment by providing
17  medical evidence consisting of signs, symptoms and laboratory findings; the claimant's own
18  statement of symptoms alone will not suffice. *See* 20 C.F.R. § § 404.1508, 416.908.

19       "A determination that an impairment(s) is not severe requires a careful evaluation of the
20  medical findings which describe the impairment(s) and an informed judgment about its limiting
21  effects on the individual's physical or mental ability(ies) to perform basic work activities; thus,
22  an assessment of function is inherent in the medical evaluation process itself." SSR 85-28, 1985
23  WL 56856, at * 4 (1985). "An impairment or combination of impairments may be found 'not
24  severe *only if* the evidence establishes a slight abnormality that has no more than a minimal
25  effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)
26  (quoting *Smolen*, 80 F.3d at 1290) (emphasis original in *Webb*); *see also* SSR 85-28, 1985 WL
27  56856, at * 3 (1985).  The step two inquiry is "a 'de minimis screening device [used] to dispose
28  of groundless claims,' ... and an ALJ may find that a claimant lacks a medically severe

1   impairment or combination of impairments only when his conclusion is 'clearly established by

2   medical evidence.'" *Webb*, 433 F.3d at 687 (quoting *Smolen*, 80 F.3d at 1290).

3          The record is devoid of mental health treatment records, although Dr. Wildman indicated

4   and Plaintiff testified that she did  undergo several months of outpatient treatment in 1994. (AR

5   108, 321.) In addition, Plaintiff's physicians noted diagnoses of depression and anxiety on

6   various occasions. (*See* AR 288, 292, 293, 369, 370, 373, 374, 375, 394, 398, 405, 459, 461, 462,

7   463, 476, 477.)

8          After filing her applications, Plaintiff underwent a psychological evaluation with

9   Dr. Wildman on July 26, 2010. (AR 321-26.) Plaintiff complained of difficulty concentrating and

10  with her memory, troubling thoughts about money and about what her children would do when

11  she was gone. (AR 321.) She identified as depressed, rating herself at a seven on a ten point

12  depression-severity index. (AR 321.) She reported that she eats when depressed, cries and

13  worries a lot. (AR 321.)

14         Dr. Wildman then described the event in 1993 that led to Plaintiff's mental impairments:

15  In 1993, Plaintiff's then-husband was watching her children, and killed one of them and

16  attempted to kill the others. (AR 322.) Plaintiff indicated that she continues to dream about the

17  murder of her son, which Dr. Wildman concluded was consistent with PTSD. (AR 322.)

18  Dr. Wildman described the situation as follows: "[T]he apparent reluctance of this patient to get

19  into this aspect of her past in my mind speaks to the strength of her defensives against conscious

20  recognition of the fact and its consequences to her, *something which is undoubtedly undermining*

21  *her mental stability*." (AR 322 (emphasis added).) While Dr. Wildman noted that Plaintiff did

22  "not resemble a severely ill psychiatric case in that no disturbances were noted in her affect or

23  behavior," she "appears to be more psychologically disturbed than she herself recognizes." (AR

24  324-25.) Dr. Wildman went on to say that it was "reasonably clear that there is unrecognized

25  anxiety which is of a post-traumatic nature in this case and that it does not only interfere with

26  Lorraine's general life, but we saw the interference of this unrecognized anxiety in her careless

27  mistakes on the mathematical tasks[.]" (AR 325.)

28

1    Dr. Wildman opined that Plaintiff could understand, remember and carry out simple and

2  detailed but not complex instructions, and was mildly to moderately impaired in her ability to

3  interact appropriately with coworkers, supervisors and the public due to her unrecognized

4  anxiety. (AR 325.) He further opined that she was moderately impaired in her ability to maintain

5  concentration and attention, and that these difficulties would interfere with tasks of any great

6  complexity. (AR 325.) He stated: "I think it is very clear that this woman needs to be enrolled in

7  mental health treatment on a most urgent basis. I believe this is a case in which a great deal of

8  exploratory work involving insight-oriented psychotherapy will need to be conducted before any

9  attempt is made to press this woman to try to function at a significantly higher level in life." (AR

10  326.)

11    On August 26, 2010, reviewing agency psychologist Dr. Kotler opined Plaintiff has

12  moderate difficulties in maintaining social functioning; moderate difficulties in maintaining

13  concentration, persistence or pace; that she was able to understand, carry out and maintain

14  concentration and attention to carry out and complete simple tasks; and that she should be

15  limited to work without direct public contact. (AR 327-343.) She can interact appropriately in

16  brief, casual encounters with the public. (AR 343.)

17    On December 6, 2010, reviewing agency psychologist Dr. Pastroa Roldan affirmed the

18  evaluative findings of Dr. Wildman. (AR 366.)

19    Plaintiff testified at the hearing about the incident, stating that her then-husband

20  murdered her son and his mentally handicapped brother, and attempted to murder and injured her

21  other son and daughter. (AR 102-103.) She believes that if she would have been in the house, she

22  could have saved them. (AR 102-103.) Her ex-husband was prosecuted and put to death for his

23  crimes. (AR 102.) She testified that her depression affected her in the workplace because she did

24  not talk to people in the workplace, and in addition, it caused problems for her at home. (AR

25  103-04.) She continues to experience depression and blames herself for not being there to stop

26  the events that occurred that day. (AR 104.) She went to counseling right after the incident, but

27  then did not go back, stating that it "just didn't work." (AR 106.) She testified the counselor told

28  her to just try to move on. (AR 108-09.)  She affirmed Dr. Wildman's notion that she tried to

1    avoid talking about the incident. (AR 106.) She confirmed that she was not getting counseling

2    and was not sure whether she would do so, although she was taking medication for depression.

3    (AR 107-08.)

4         The ALJ found that Plaintiff had no limitations in her activities of daily living. (AR 21.)

5    She found Plaintiff had mild limitations in social functioning, because Plaintiff spends time with

6    her family and speaks with a daughter who lives in Los Angeles. (AR 21.) The ALJ recounted

7    that Plaintiff worked as an apartment manager for thirteen years, and developed skills in

8    customer service. (AR 21.) The ALJ similarly found Plaintiff only had mild limitation in

9    concentration, persistence or pace, finding that she could concentrate well enough to sew, watch

10   television, cook, drive and read, and she was able to work despite her symptoms of PTSD and

11   depression. (AR 21.)

12        The court agrees with Plaintiff that the ALJ erred in finding her mental impairments not

13   severe at step two. As indicated above, the ALJ could only find her mental impairments severe if

14   the "evidence establishe[d] a slight abnormality that ha[d] no more than a minimal effect on an

15   individual's ability to work," *Webb*, 433 F.3d at 686, and if the determination was clearly

16   supported by the medical evidence. In this case, the ALJ's determination that Plaintiff's mental

17   impairments had no more than a minimal effect on her ability to work is not clearly supported by

18   the medical evidence.

19        While there are no mental health treatment notes in the record, the ALJ acknowledged

20   Plaintiff's mental impairments of PTSD and depression stemming from a traumatic and tragic

21   event in 1993 where Plaintiff's then-husband murdered one of her children and attempted to

22   murder others. The consultative examining and reviewing psychologists concurred that

23   Plaintiff's mental impairments had more than a minimal effect on her ability to function in a

24   work setting. Dr. Wildman reiterated again and again that Plaintiff did not even realize the extent

25   or her anxiety which impacted her ability to function which appears to itself be a symptom of her

26   condition. Therefore, the ALJ's decision is not supported by the medical evidence.

27        The Commissioner argues that the ALJ did not impermissibly substitute her opinion for

28   that of the doctors because the RFC is the ALJ's exclusive purview. (Docs. # 18/19 at 5.) While

the ALJ is responsible for determining a claimant's RFC, the ALJ's determination that an impairment is not severe at step two must be "clearly established by medical evidence," and here, the medical evidence is directly contrary to the ALJ's finding.

Therefore, the ALJ erred in not finding Plaintiff's mental impairments severe at step two. The court must now address whether that error was harmless as the Commissioner argues. The Ninth Circuit recently confirmed that harmless error analysis applies in Social Security cases. *Marsh v. Colvin*, --- F.3d ---, 2015 WL 4153858, at * 2 (9th Cir. July 10, 2015). "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and ... 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Id.* at * 2-3 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

> [W]here the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate.

*McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). "[T]he more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Marsh*, 2015 WL 4153858, at * 3.

The Commissioner argues that the doctors who assessed Plaintiff's mental impairments concluded that despite some mild and moderate limitations, Plaintiff could still perform simple, repetitive tasks and an RFC for simple work accommodates moderate limitations in several areas of mental functioning, including the ability to maintain concentration and attention, which is consistent with the ALJ's step-four finding that Plaintiff could perform her past relevant work and step five finding that she could perform other work in the national economy. (Docs. # 18/19 at 5-6, n. 2.)

The court's harmless error analysis regarding the ALJ's step two determination depends on the propriety of the ALJ's determinations at steps four and five, which Plaintiff also challenges. Therefore, the court will defer its harmless error analysis of the ALJ's step two determination until after it addresses whether the ALJ erred or should be affirmed at subsequent steps.

**D. Past Relevant Work**

If the ALJ does not find a claimant disabled at steps one through three, the ALJ will consider the RFC and past relevant work at step four in determining whether the claimant is disabled. 20 C.F.R. §§ 404.1560(a), 416.960(a).

A VE may offer testimony regarding "whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). If the claimant is found to be able to have the RFC to perform past relevant work the claimant will be found to be not disabled. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).

The VE identified Plaintiff's past relevant work as follows: (1) resident manager from 1994 until 2007, DOT 186.167-018 (light work); (2) housekeeper, DOT 323.687-014 (light work); and (3) floor clerk, DOT 299.677-010 (light work). (AR 109.)

The ALJ then posed the following limitations to the VE: an individual who would be 59 as of the alleged onset date; educated through twelfth grade; with the past relevant work identified; a medium level work restriction; restrictions that she avoid climbing and working at heights; restrictions limiting her to occasional posturals and avoiding hazards (working at heights or operating dangerous moving machinery). (AR 110-11.) The ALJ specifically stated that she was not giving any mental limitations, and asked the VE whether in light of these limitations, Plaintiff could still perform any of her past relevant work. (AR 111.) The VE testified that Plaintiff could still perform all three of the jobs identified as past relevant work.

**1. Housekeeper Position-Within Fifteen Years**

Plaintiff performed her work as a housekeeper prior to 1994. (Doc. # 17-1 at 7; AR 86, 109.)

The regulations provide, in pertinent part:
We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities

acquired in a job done then continue to apply. The 15-year guide is intended to insure that remote work experience is not currently applied.

20 C.F.R. § 404.1565(a); 20 C.F.R. § 416.965(a). The Commissioner is correct that the regulations do not preclude considering past relevant work older than fifteen years; instead, fifteen years is the time frame usually considered by the agency. 20 C.F.R. § 404.1565(a); 20 C.F.R. § 416.965(a); *see also* SSR 82-62 at * 1, 1982 WL 31386 (1982). The regulation also states that where an applicant has "acquired skills through your past work, we consider you to have these work skills unless you cannot use them in other skilled or semi-skilled work that you can now do." *Id.* Social Security Ruling 82-62 similarly provides that "[t]he 15-year guide is intended to insure that remote work experience which could not reasonably be expected to be of current relevance is not applied." SSR 82-62 at * 2, 1982 WL 31386 (1982).

At step four, "claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari,* 249 F.3d 840, 844 (9th Cir. 2001). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* The ALJ will compare the assessed RFC with the claimant's past relevant work, which is defined as work the claimant has done within the last fifteen years, which lasted long enough for the claimant to learn to do it, and was substantial gainful activity. *See* 20 C.F.R. § § 404.1560(b), (b)(1), 416.960(b), (b)(1), 404.1565(a), 416.965(a).

Here, the ALJ concluded that all of Plaintiff's prior work was within fifteen years of the alleged onset date. (AR 25.) The ALJ assessed Plaintiff's RFC and referred to the VE's testimony that Plaintiff is able to perform the past relevant work as actually and generally performed in concluding that Plaintiff is able to perform this past relevant work. (AR 25-26.)

Plaintiff performed the housekeeping position prior to the resident manager position, which she began in 1994. (AR 109.) Thus, the housekeeper position is outside of the fifteen year window, which "is generally the 15 years prior to the time of adjudication at the initial, reconsideration or higher appellate level." SSR 82-62 at * 2, 1982 WL 31386 (1982).

The court concludes that even if the ALJ erred in stating that the housekeeper position was within the fifteen year period, the error is harmless because the ALJ is not precluded from

considering evidence outside the fifteen year window, particularly when the it is reasonable to think that the work experience is still of current relevance. Here, there is no evidence that the skills and abilities acquired as a housekeeper do not still apply to the position generally, more than fifteen years later. Nor has Plaintiff demonstrated that the specific skills she acquired as a housekeeper more than fifteen years ago cannot be utilized in performing work as a housekeeper currently. This conclusion is reaffirmed by the fact that the housekeeping position qualifies as unskilled work which is defined as that "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568.

The question now becomes whether the ALJ erred in not posing any mental limitations to the VE in asking the VE to identify past relevant work Plaintiff could still perform, or whether any such error was harmless.

Once again, Dr. Wildman opined that Plaintiff could understand, remember and carry out simple and detailed but not complex instructions, and was mildly to moderately impaired in her ability to interact appropriately with coworkers, supervisors and the public due to her unrecognized anxiety. (AR 325.) He further opined that she was moderately impaired in her ability to maintain concentration and attention, and that these difficulties would interfere with tasks of any great complexity. (AR 325.) Reviewing agency psychologist Dr. Kotler opined Plaintiff has moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; that she was able to understand, carry out and maintain concentration and attention to carry out and complete simple tasks; and that she should be limited to work without direct public contact. (AR 327-343.) Dr. Kotler concluded Plaintiff can interact appropriately in brief, casual encounters with the public. (AR 343.) Reviewing agency psychologist Dr. Pastora Roldan affirmed these opinions. (AR 366.)

The ALJ did not find Plaintiff's mental impairments to be severe at level two, but was still required to consider these impairments in assessing Plaintiff's RFC and ability to do past-relevant work in subsequent steps. *See* 20 C.F.R. § § 404.1545(a)(2), 41.945(a)(2). The ALJ did address Plaintiff's mental impairments at step four, and once again found that the evidence showed her mental symptoms did not significantly interfere with her ability to work. (AR 24.) In

1  addition, the ALJ assigned little weight to the opinions of Dr. Wildman and the State agency

2  psychological consultants, finding that they overlooked Plaintiff's past work history and

3  activities of daily living, which the ALJ found established Plaintiff could in fact concentrate well

4  enough to perform the required tasks and interact with others. (AR 24-25.)

5          Even if the court determined that the ALJ erred in rejecting the opinions of Dr. Wildman

6  and the State agency psychological consultants at step four, the court concludes that error is

7  harmless because the past relevant work position of housekeeper is consistent with the mental

8  limitations imposed by these doctors.

9  The housekeeping position has a DOT reasoning level of one, which requires the individual to

10  "[a]pply commonsense understanding to carry out simple one-or two-step instructions" and

11  "[d]eal with standardized situations with occasional or no variables in or from these situations

12  encountered on the job." DOT 323.687-014. In addition, the position would not involve

13  significant interaction with people in terms of taking instructions or helping people. *Id*.

14  The doctors found Plaintiff mildly to moderately limited with respect to concentration,

15  persistence or pace such that she should be limited to simple tasks, and these limitations are

16  consistent with the demands imposed by the housekeeping position. In addition, the doctors

17  found Plaintiff to be moderately limited in her ability to interact with others, and the

18  housekeeping position requires no significant interaction with others. Notably, Plaintiff does not

19  argue that the housekeeper position would be excluded due to her mental limitations; she only

20  made that argument with respect to the resident manager position. (Doc. # 17-1 at 6-9.)

21          Therefore, any error made by the ALJ in finding these opinions were not severe at step

22  two or in rejecting these opinions at step four is harmless. Plaintiff is able to perform past

23  relevant work as a housekeeper, which results in the conclusion that she is not disabled.

24  20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant

25  who is physically and mentally capable of performing past relevant work is not disabled, whether

26  or not he could actually obtain employment.").

27

28

1    Consequently, the ALJ's decision that Plaintiff can perform past relevant work as a

2    housekeeper and is not disabled should be affirmed. As a result of this finding, the court need not

3    reach Plaintiff's remaining arguments.

4                                        **IV. CONCLUSION**

5            After carefully reviewing the record as a whole, the court finds that any errors the ALJ

6    made in finding Plaintiff's mental impairments not severe at step two, in rejecting the

7    psychological opinions at step four, and in finding Plaintiff's past relevant work as a

8    housekeeper was performed within the fifteen year regulatory window are harmless. Therefore,

9    the ALJ's determination that Plaintiff can perform past relevant work as a housekeeper and is not

10   disabled should be affirmed.

11                                     **V. RECOMMENDATION**

12           **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and/or Remand

13   (Docs. # 17/#17-1) be **DENIED**;

14           **IT IS HEREBY FURTHER RECOMMENDED** that the Commissioner's Cross-

15   Motion to Affirm (Doc. # 18) be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

16           The parties should be aware of the following:

17           1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local

18   Rules of Practice, specific written objections to this Report and Recommendation within fourteen

19   days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and

20   Recommendation" and should be accompanied by points and authorities for consideration by the

21   District Court.

22           2. That this Report and Recommendation is not an appealable order and that any notice of

23   appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

24   until entry of the District Court's judgment.

25   DATED: July 31, 2015

26                                        _____

27                                        WILLIAM G. COBB
                                          UNITED STATES MAGISTRATE JUDGE
28